[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13587

_____

D.C. Docket No. 1:11-cr-20147-JLK-1

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

ANGEL PUENTES,
a.k.a. D'Angelo Salvatore,
a.k.a. Salvatore D'Angelo,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 5. 2015)

Before MARCUS, WILLIAM PRYOR, and JILL PRYOR, Circuit Judges.

MARCUS, Circuit Judge:

This case raises a question of first impression: whether the district court

exceeded its authority under Federal Rule of Criminal Procedure 35(b) and the

Mandatory Victims Restitution Act (MVRA) of 1996, 18 U.S.C. §§ 3663A-3664,

by eliminating, <u>sua sponte</u>, Angel Puentes's obligation to jointly and severally pay more than $4 million in mandated restitution based upon his substantial assistance. Puentes and his associates conspired to defraud lending institutions out of more than $7 million by submitting fraudulent loan applications. Puentes pled guilty to conspiracy to commit wire and bank fraud in violation of 18 U.S.C. § 1349. As part of his sentence, he was required to pay $4,405,305.94 in restitution to his victims. While in prison, Puentes assisted federal law enforcement authorities with the investigation of another inmate in an unrelated case. In recognition of his substantial assistance, the United States filed a motion under Rule 35(b) to reduce his term of incarceration. In granting the motion, however, the district court decided to terminate Puentes's obligation to pay restitution as well as reduce his prison sentence from 97 months to 42 months. The United States appeals from that portion of the district court's order eliminating Puentes's obligation to pay restitution to the victims of his crime.

We hold that the district court did not have the legal authority to eliminate Puentes's restitution obligation based on a Rule 35(b) motion. The Mandatory Victims Restitution Act makes restitution <u>mandatory</u> for certain crimes, like the fraud offense to which Puentes pled guilty, "[n]otwithstanding any other provision of law." 18 U.S.C. §3663A(a)(1). We read this as a clear indication from Congress that the MVRA was intended to trump Rule 35. Moreover, one provision

of the MVRA, 18 U.S.C. § 3664(o), provides an exhaustive list of the ways in which a mandatory restitution order can be modified.  None apply in this case. Notably, while § 3664(o) allows for a sentence imposing an order of restitution to be corrected under Rule 35(a), the statute does not permit the district court to reduce such a sentence under Rule 35(b).  The district court was not free to reduce Puentes's restitution as a reward for his substantial assistance, even though his co-conspirators may have remained jointly and severally liable for the amount owed. Thus, we reverse the district court's judgment, and remand with instructions to reinstate Puentes's obligation to make restitution to the victims.

## I.

The essential facts are these.  From September 2004 to December 2007, Puentes organized a scheme to defraud a variety of lending institutions out of millions of dollars in mortgage loan funds.  Among other things, Puentes and his co-conspirators prepared fraudulent loan applications on behalf of straw purchasers for at least 11 parcels of property located in Miami-Dade County and Broward County, Florida.  Specifically, one of Puentes's co-conspirators falsified HUD-1 Settlement Statements -- standard forms used in closing real estate transactions -- to induce lending institutions to approve the deals.  Once the loans were approved, the mortgage funds would be illegally disbursed to one of 23 accounts controlled by Puentes.  Eventually, Puentes and his co-conspirators stopped making payments

3

on the mortgage loans, which caused the properties to fall into foreclosure and resulted in substantial losses for the lenders -- losses which amounted to more than $7 million. Puentes's primary role in the scheme was to recruit straw purchasers, who received a fee for their participation once the loans were approved.

On February 22, 2011, Puentes and three co-defendants -- Dania Aleman, Angela Frye, and David Burgos -- were charged by a federal grand jury in a 23-count indictment in the United States District Court for the Southern District of Florida. For his role in the scheme, Puentes was accused of one count of conspiracy to commit wire and bank fraud, in violation of 18 U.S.C. § 1349 (Count 1); fourteen counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts 2-15); and eight counts of bank fraud, in violation of 18 U.S.C. § 1344 (Counts 16-23). The indictment also sought the forfeiture of any proceeds from the defendants' crimes, "including, but not limited to, the sum of $10,400,000." Three other co-conspirators (Andrew David, Rosa Diaz, and Daniel Santiago) were charged in related cases in the same district.

Puentes entered into a written plea agreement with the United States and subsequently pled guilty to the conspiracy charge in Count 1. By agreement, Puentes acknowledged that he would be required to "make restitution in an amount determined by the Court." The parties agreed that the losses resulting from his conduct amounted to somewhere between $7 million and $20 million, and that

4

Puentes received "more than a million dollars in gross proceeds from financial institutions." The United States also made a factual proffer, which laid out the basic details of the conspiracy -- including the fact that Puentes "organized" the scheme -- and reiterated that the losses stemming from Puentes's conduct amounted to more than $7 million.

For his role in the conspiracy, the district court sentenced Puentes to 97 months of imprisonment, followed by 5 years of supervised release. Puentes was assigned a base offense level of 7 for an offense involving fraud, U.S.S.G. § 2B1.1(a)(1); a 20-level increase because the loss was more than $7 million but less than $20 million, id. § 2B1.1(b)(1)(K); a 2-level increase because Puentes derived more than $1 million in gross receipts, id. § 2B1.1(b)(16)(A); and a 4-level increase because Puentes was an organizer of criminal activity involving 5 or more participants, id. § 3B1.1(a). However, he received a 3-level reduction for his acceptance of responsibility and assistance to the government, id. § 3E1.1(a), (b), yielding a total offense level of 30. Puentes had no criminal history, so with a total offense level of 30 and a criminal history category of I, the guidelines range was 97 to 121 months of imprisonment.

The district court also ordered Puentes to pay restitution in the amount of $4,445,305.94, for which he was jointly and severally liable with his co-conspirators. Upon his release from incarceration, Puentes was required to remit

5

10 percent of his monthly gross earnings to the Clerk of Court, to be forwarded to his victims -- Bank of America, Ducat Insurance Group, Chase Bank, and Wells Fargo Bank.  Puentes's co-conspirators also were ordered to pay restitution in varying amounts.  Aleman was held jointly and severally liable for the same $4,445,305.94, while Frye and Burgos were held jointly and severally liable for $877,038.00 and $718,159.84, respectively.[1]  In the related cases, David and Diaz were also held jointly and severally liable for $4,445,305.94, and Santiago was held jointly and severally liable for $103,497.02.

Three years later, on May 2, 2014, the United States filed a motion to reduce Puentes's sentence under Rule 35(b).  While incarcerated, Puentes assisted the government in the investigation of another inmate in an unrelated case.  The case, United States v. Stirling, involved a defendant, John Stirling, charged with importing cocaine and heroin.  Puentes provided federal law enforcement officials with a letter that Stirling had written, in which he laid out a duress defense that he wanted his co-defendants to corroborate at trial.  When Stirling testified as to his duress defense at trial, Puentes was called by the government as a rebuttal witness. Stirling was convicted by the jury, but was subsequently granted a new trial because the government had failed to disclose other evidence used to impeach

---

[1] The presentence investigation report lists a restitution figure for Frye of $3,844,115.23, but the sentence entered in her case states the amount as $877,038.00.  The difference does not affect this case.

6

Stirling's testimony.  Puentes remained willing to testify at Stirling's second trial; however, Stirling pled guilty, eliminating any subsequent need for Puentes's testimony.  In recognition of Puentes's substantial assistance, the United States submitted that a reduction in Puentes's sentence was fully warranted, moving the court under Rule 35(b).  The government made no mention of Puentes's restitution.

The district court conducted a second sentencing hearing on the government's Rule 35(b) motion on June 18.  At the hearing, the government recommended that Puentes's sentence be reduced from 97 to 64 months, while Puentes's attorney requested that it be reduced still more, to 42 months.  After considering the parties' recommendations, the court observed that the Stirling case "was a very, very serious case," that Puentes's assistance "was extraordinary and far beyond what we usually see," and that his help was "obviously a vital controlling factor."  While the court respected the recommendations provided by the "experienced prosecutors," the court concluded that the government had "perhaps underestimated" the extent of the reduction merited by Puentes's assistance.  Thus, the court granted the government's Rule 35(b) motion and reduced Puentes's prison term to 42 months.

Then, without any application or prompting from the parties, the court took up the question of restitution.  The court said, "there is going to be another reduction or reward . . . to remove from the original sentence the order that the

restitution is to be joint and several." That is, Puentes would no longer be "jointly and severally responsible for the $4 million fraud." The court mentioned that "another factor" in its decision was that Puentes was merely a recruiter, which the court "place[d] . . . in a different level." The court then asked the parties if they had any questions. After clarifying the reduction in Puentes's sentence of imprisonment, counsel for the government asked "[i]n any event, with respect to the restitution --." The court, however, continued to discuss the issue of incarceration. The prosecutor again tried to raise the restitution issue, asking, "Just with respect to the restitution order and the Court's removal of the joint and several liability, is it simply that Mr. Puentes is going to be individually responsible for an amount of restitution?" The court responded that Puentes would be "totally free from any further commitment on the $4 million . . . . I am giving him a reward, in addition to the time, of [not] having to pay $4 million back jointly and severally." The court then directed the parties to prepare an appropriate order. The prosecutor tried a third time, informing the court that "respectfully, I need to make an objection to the restitution." The court replied, "Have a seat," and then adjourned the hearing.

Before the district court entered a written order on the Rule 35(b) motion, the United States moved for reconsideration, requesting that the court alter its decision to terminate Puentes's obligation to pay restitution. The government

8

argued that restitution was mandatory in Puentes's case, because he was convicted of an offense against property involving fraud, and restitution in fraud cases is mandatory under the MVRA. 18 U.S.C. § 3663A(c)(1)(a)(ii). And, according to the government's argument, 18 U.S.C. § 3664(o) provides "the only mechanisms" by which such an order can be modified. But, the government averred, none of the mechanisms enumerated in the statute applied to Puentes's case. While § 3664(o) mentions that an order of restitution can be "corrected" under Rule 35, it does not say that such an order can be "reduced" under Rule 35. Finally, the government submitted that the termination of Puentes's restitution obligation "should not be a reward" for the admittedly substantial assistance that he provided. In response, Puentes argued only that the government "cite[d] no support from the Eleventh Circuit" in its motion for reconsideration.

After considering the parties' submissions, the court issued a written order that granted the government's application to reduce Puentes's prison sentence, incorporated the court's prior decision to terminate Puentes's obligation to pay restitution, and denied the government's motion for reconsideration. The court agreed that restitution in Puentes's case was mandatory, and apparently also agreed that § 3664(o) "is aimed at correction of, rather than reduction of, sentences" under Rule 35, but explained that § 3664(o) "does not impact this Order because this case is decided on joint and several liability grounds." The court observed that

9

Puentes's co-conspirators remained jointly and severally liable for the amount of restitution, and so "terminating [Puentes's] restitution obligation does not remove or even alter the restitution amount to which victims in this case are entitled." And, moreover, the court said, "it is possible [Puentes] would never personally contribute to the restitution."  Because Puentes had "provided extraordinary assistance beyond what was required of him," the court concluded that he was entitled to a reduction under Rule 35(b).

This timely appeal followed.

## II.

At the outset, Puentes argues, for many reasons, that the government cannot quarrel with the district court's Rule 35(b) judgment: first, the court's decision to reduce his sentence, as well as the amount of the reduction, was a discretionary determination beyond the power of this Court to review; second, even if we have jurisdiction to entertain the government's appeal, the government waived any objection by failing to make a contemporaneous and specific objection to the court's application of Rule 35(b); and, finally, the government invited the court's error, and so may not challenge it on appeal.  None of these arguments are convincing, and we conclude that the merits of this appeal are properly before us.

A.

First, Puentes claims that the district court's decision was a discretionary determination beyond the power of the government to appeal.  A district court's ruling on a Rule 35(b) motion is "a discretionary one from which an appeal generally will not lie."  United States v. Manella, 86 F.3d 201, 203 (11th Cir. 1996) (per curiam).  However, 18 U.S.C. § 3742(b)(1) specifically provides that "[t]he Government may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence . . . was imposed in violation of law."  The government's argument in this case essentially boils down to the contention that the district court eliminated Puentes's restitution obligation unlawfully.  This is not a case where, for example, the government objects to the amount of the court's reduction, which, we agree, would involve an exercise of discretion, and one generally unreviewable on appeal.  See Manella, 86 F.3d at 203 (noting that a challenge to "the merits of the district court's Rule 35(b) determination" would be unreviewable).  Rather, here, the United States claims that the district court lacked any legal authority to reduce Puentes's obligation at all -- a challenge well within the ambit of § 3742.

Our cases remove any doubt that the government may appeal a Rule 35(b) determination imposed in violation of the law.  Thus, for example, in United States v. Chavarria-Herrara, we held that "§ 3742(b) allows the government to appeal a

11

Rule 35(b) determination . . . when that determination results in a sentence that satisfies one of the criteria for appeal set out in § 3742." 15 F.3d 1033, 1035 (11th Cir. 1994). We then evaluated the two arguments presented by the government on the merits: that the district court lacked the authority to reduce the defendant's sentence below the mandatory minimum, and that it unlawfully considered factors other than the defendant's substantial assistance. Id. at 1036-37. Likewise, in United States v. Manella, we heard an appeal from a defendant who also claimed that the district court considered factors other than his assistance, noting that his "claim [was] that his sentence was imposed in violation of law." 86 F.3d at 203. Puentes argues that the rule in these two cases is limited to challenges to the district court's improper consideration of extrinsic factors. The plain language of § 3742, however, allows an appeal whenever the district court imposes a sentence "in violation of law." The specific basis for the challenge does not matter. We conclude, therefore, that the government was empowered to bring this appeal under § 3742.

## B.

Next, Puentes claims that the United States waived any challenge to the district court's decision on restitution by failing to object during the hearing on the government's Rule 35(b) motion. It is by now abundantly clear that "[a] federal appellate court will not, as a general rule, consider an issue that is raised for the

first time on appeal." In re Pan Am. World Airways, Inc., 905 F.2d 1457, 1461-62 (11th Cir. 1990). "Where the district court has offered the opportunity to object and a party is silent or fails to state the grounds for objection, objections to the sentence will be waived for purposes of appeal." United States v. Jones, 899 F.2d 1097, 1103 (11th Cir. 1990), overruled on other grounds by United States v. Morrill, 984 F.2d 1136 (11th Cir. 1993) (en banc) (per curiam). And in order to "preserve a claim . . . on appeal, [a party] must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it." Gennusa v. Canova, 748 F.3d 1103, 1116 (11th Cir. 2014) (quotation omitted). We think the United States did just that in this case.

The first time the prosecutor raised the issue of restitution, the district court continued to discuss the reduction in Puentes's term of incarceration. The Assistant U.S. Attorney then asked whether "Mr. Puentes [was] going to be individually responsible for an amount of restitution," and the court clarified that Puentes "is totally free from any further commitment on the $4 million . . . . I am giving him a reward, in addition to the time." At the close of the hearing, counsel tried a third time, saying, "Your Honor, respectfully, I need to make an objection to the restitution." The court advised her to "[h]ave a seat." As we see it, the prosecutor tried repeatedly to raise an objection to the court's order on restitution. To the extent she failed to provide the legal basis for that objection, she did not

have a full opportunity to do so -- which means that no prejudice can result. Fed. R. Crim. P. 51(b).

If that were not enough, and we think that it plainly is, the United States timely filed a motion for reconsideration that explained its reasons for objecting. The government asked that the court "reconsider its order terminating the defendant's obligation to pay restitution." It specifically argued that "a mandatory restitution order may not be reduced for a defendant's substantial assistance." Indeed, the government's motion stressed the very same points that the government now raises on appeal: (1) restitution is mandatory for the convicted crime; (2) "18 U.S.C. § 3664(o) provides the only mechanisms by which an order of restitution can be modified"; and (3) "none of the circumstances set forth in [§ 3664(o)] are present." Although the United States closed by "submit[ting] that the court's termination of the defendant's mandatory obligation to pay restitution . . . should not be a reward," the gravamen of the government's motion remained its assertion that the district court lacked the authority to eliminate Puentes's obligation to pay restitution. We discern virtually no difference between the objection put forward in the government's motion and the argument the government now raises on appeal. No waiver occurred here.

C.

Finally, Puentes asserts that the United States invited the error it now seeks to challenge on appeal by failing to "specify the sentence benefit it sought" in its "boilerplate Rule 35(b) motion." "It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." United States v. Ross, 131 F.3d 970, 988 (11th Cir. 1997) (quotation omitted). This rule applies when a party "induces or invites the district court into making an error." United States v. Stone, 139 F.3d 822, 838 (11th Cir. 1998) (per curiam). If a party invites an error, "that error will not be grounds for reversal on appeal." United States v. Haynes, 764 F.3d 1304, 1308 (11th Cir. 2014).

On this record, however, we are satisfied that, far from inviting the district court's error, the government attempted to correct it at every available opportunity. Our cases which have applied the invited error doctrine have typically dealt with mistakes that one party specifically introduced. Thus, for example, we barred a defendant from challenging his term of supervised release on appeal when he had requested, through counsel, that supervised release be imposed. United States v. Love, 449 F.3d 1154, 1157 (11th Cir. 2006) (per curiam). In the instant case, although the government's motion did not specify a particular sentence reduction, it also did not specifically request that Puentes's restitution be altered in any way. Moreover, the government averred that the exact sentence reduction would "be

15

disclosed at a hearing on th[e] motion." At the hearing, the Assistant U.S. Attorney clarified that "the Government is recommending a reduction in Mr. Puentes'[s] sentence of 33 percent which would be 33 months" -- that is, a reduction in his term of incarceration. Notably, the government never made any mention of a reduction in Puentes's restitution. And, as we've recounted, once the court announced that it would eliminate Puentes's restitution obligation, the government promptly objected. The government did so once more in its motion for reconsideration. All in all, we think it would be surpassing strange to apply the invited error doctrine to an error that the government never induced, let alone to an error to which the government specifically objected. Under these circumstances, the invited error doctrine does not apply.

### III.

We turn to the merits of this case. On appeal, the government argues that the Mandatory Victims Restitution Act limits the ways in which a mandatory order of restitution may be modified, and did not permit the district court to eliminate Puentes's restitution obligation in this case. The district court, however, reasoned that the statute did not apply because it decided the case "on joint and several liability grounds." Because Puentes's co-conspirators would remain jointly and severally liable for paying restitution, terminating Puentes's restitution obligation would not change the amount to which his victims were ultimately entitled. Thus,

16

the court held that the MVRA's requirements were left "undisturbed."  We disagree.

For starters, the court's order plainly altered the amount of restitution Puentes is required to pay, whether or not it affected the ultimate amount his victims would receive.  Where restitution is mandatory, as it is here, the court "shall order . . . that the <u>defendant</u> make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1) (emphasis added).  We interpret this language as a command that the defendant be obliged to pay restitution to his victims, not simply that restitution may be paid in some manner and under some circumstances.  See <u>United States v. Robertson</u>, 493 F.3d 1322, 1329 (11th Cir. 2007) ("Under the Restitution Act, defendants convicted of wire or mail fraud must make restitution to any 'victim' of their offenses."); <u>United States v. Roper</u>, 462 F.3d 336, 338 (4th Cir. 2006) ("When a defendant is convicted of a crime specified in the MVRA, . . . Congress has mandated that the defendant's sentence include full restitution to the victim.").  Even if Puentes's victims could still collect from his co-conspirators, the district court's ruling had the effect of disregarding the MVRA's mandate that Puentes himself must pay.

Moreover, the MVRA specifically contemplates joint and several liability. In cases involving multiple defendants, the court may make each defendant liable for the full amount of restitution, or may apportion liability among the defendants

17

based on their level of contribution to the victims' losses.  18 U.S.C. § 3664(h).

Notably, the MVRA does not allow the district court to exempt one defendant --

one responsible for the entirety of the victims' losses -- from the obligation to pay

restitution.

By completely eliminating Puentes's restitution obligation, the district court

reduced the number of defendants who are required to pay and thereby reduced the

likelihood that Puentes's victims will be able to collect.  The very reason for

imposing joint and several liability is that "as between innocent plaintiffs and

culpable defendants[,] the latter should bear th[e] risk" that some defendants will

ultimately be unable to pay.  Restatement (Third) of Torts: Apportionment Liab.

§ 10 cmt. a (2000).  By absolving Puentes of his restitution obligation, the court

shifted that risk on to his victims.  The risk is made all the more substantial

because not all of Puentes's co-conspirators are liable for the full $4,445,305.94.

(Aleman, David, and Diaz are also liable for $4,445,305.94, while Frye is liable for

$877,038.00, Burgos for $718,159.84, and Santiago for $103,497.02.)  We

conclude, therefore, that the district court's decision implicated the Mandatory

Victims Restitution Act, and we must look to that statute to determine whether the

district court's order may be upheld.

18

IV.

Thus, we are obliged to answer the basic question at the heart of this appeal: whether the Mandatory Victims Restitution Act gives a district court the authority to eliminate a defendant's mandatory restitution obligation in exchange for the defendant's substantial assistance under Rule 35(b).  "We review de novo the scope of the legal authority of the district court to reduce a sentence."  United States v. Green, 764 F.3d 1352, 1355 (11th Cir. 2014), cert. denied, 135 S. Ct. 2819 (2015).[2]  The law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule.  United States v. Diaz-Clark, 292 F.3d 1310, 1319 (11th Cir. 2002).  We hold that the district court did not have the authority to eliminate Puentes's restitution obligation in this case.

We begin by considering the Mandatory Victims Restitution Act as a whole. As its title suggests, the MVRA directs the district court to order restitution in certain cases, and limits the circumstances in which a mandatory restitution order

---

[2] Puentes argues that we must review the district court's decision for an abuse of discretion because this case arises on a motion for reconsideration.  However, the government's notice of appeal specifies that it is appealing the court's "Order Granting Motion for Reduction of Sentence," and not simply the denial of its motion for reconsideration.  Our review is, therefore, de novo.  But, even if we were to look for an abuse of discretion, we would find one here.  "A [d]istrict [c]ourt abuses its discretion when it applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." Rodriguez v. Florida Dep't of Corr., 748 F.3d 1073, 1075 (11th Cir. 2014) (quotation omitted), cert. denied, 135 S. Ct. 1170 (2015).  As we explain, the district court exceeded its lawful authority by eliminating Puentes's restitution obligation.

can subsequently be modified.  Specifically, the MVRA eliminates the district court's discretion regarding restitution in nearly all instances where a victim suffered an identifiable monetary loss and requires that a convicted defendant pay restitution to a person directly and proximately harmed by the defendant's misconduct.  See 18 U.S.C. § 3663A(a)(1) ("Notwithstanding any other provision of law, . . . the court shall order . . . that the defendant make restitution to the victim of the offense."); id. §§ 3663A(a)(2), (c)(1)(A)(ii).  The notion that district courts can reduce a mandatory restitution obligation under Rule 35(b) is antithetical to that command.  Indeed, as the Fourth Circuit has explained, if "a district court has the authority to remit restitution orders that Congress has said must be mandatorily imposed," it "would nullify the force and effect of the MVRA."  Roper, 462 F.3d at 338; see also United States v. Spallone, 399 F.3d 415, 424 (2d Cir. 2005) ("Rule 35(b) authorizes a district court to reduce any aspect of a defendant's sentence, including supervised release terms and orders of restitution not mandated by statute." (emphasis added)).

To be sure, Rule 35(b)(4) states that a district court may reduce a sentence "to a level below the minimum sentence established by statute."  Puentes argues that restitution serves as part of a defendant's sentence, and that this language therefore trumps the statutory command that the district court "shall" order restitution.  But § 3663A(a)(1) makes restitution mandatory "[n]otwithstanding any

20

other provision of law," a phrase which we read as "Congress's indication that the statute containing that language is intended to take precedence over any preexisting or subsequently-enacted legislation on the same subject." Castro v. Sec'y of Homeland Sec., 472 F.3d 1334, 1337 (11th Cir. 2006) (quotation omitted and alterations adopted); see Kucana v. Holder, 558 U.S. 233, 238 & n.1 (2010) (explaining that "[n]otwithstanding any other provision of law" means the statute applies "regardless of what any other provision or source of law might say"). Section 3663A(a)(1) trumps Rule 35(b)(4), not the other way around. We add that the MVRA is more specific than Rule 35, and was enacted after Rule 35 -- factors which also suggest that Congress intended for the statute to trump the rule, to the extent the two conflict. See Gilbert v. United States, 640 F.3d 1293, 1308 (11th Cir. 2011) (en banc) ("An ambiguous or general statutory provision enacted at an earlier time must yield to a specific and clear provision enacted at a later time."). Thus, as we see it, allowing a district court to reduce a defendant's mandatory restitution obligation under Rule 35(b) would plainly conflict with the scheme enacted by Congress in the MVRA.

Moreover, a specific provision of the Mandatory Victims Restitution Act, 18 U.S.C. § 3664(o), defines when a mandatory restitution order becomes a final judgment, and lists the sources of authority allowing a district court to modify a mandatory order of restitution. Section 3664(o) provides:

A sentence that imposes an order of restitution is a final judgment notwithstanding the fact that --

(1) such a sentence can subsequently be --

(A) corrected under Rule 35 of the Federal Rules of Criminal Procedure and section 3742 of chapter 235 of this title;

(B) appealed and modified under section 3742;

(C) amended under subsection (d)(5); or

(D) adjusted under section 3664(k), 3572, or 3613A; or

(2) the defendant may be resentenced under section 3565 or 3614.

Reading the MVRA as a whole, it is clear that Congress intended to sharply limit the district court's discretion over restitution. We think that § 3664(o) should be read as offering an exclusive list of the ways in which a mandatory order of restitution can be changed after it has been announced. See Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) ("[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (quotation omitted)). It is a longstanding principle of statutory construction that "when a statute limits a thing to be done in a particular mode, it includes a negative of any other mode." Christensen v. Harris Cnty., 529 U.S. 576, 583 (2000) (alteration adopted) (quoting Raleigh & Gaston R.R. Co. v. Reid, 80 U.S. (13 Wall.) 269, 270 (1872)). Cf. Roper, 462 F.3d at 338 ("Because the MVRA includes one unique circumstance where district courts may reduce a

22

mandatory order of restitution, we will not read into the statute any additional authority to remit such orders."). In this case, the fact that Congress seems to have provided an exhaustive catalogue of the ways in which a mandatory restitution order can be modified suggests that no other ways exist.

Indeed, every circuit court to consider this issue has indicated that a district court may only modify a mandatory restitution order through the means specified in § 3664(o). In United States v. Wyss, the Tenth Circuit considered whether 18 U.S.C. § 3563(c), which allows a district court to modify a defendant's conditions of probation, permitted a modification to a mandatory restitution order imposed as a condition of probation. 744 F.3d 1214, 1215 (10th Cir. 2014). The court explained that § 3664(o) alone "provides the means by which an order of restitution may be altered." Id. at 1217. Because none of the § 3664(o) circumstances applied, the court held that the defendant's restitution obligation could not be altered under § 3563(c). Id. at 1218. Likewise, the Fourth Circuit in United States v. Grant, addressing the same question, was "extremely skeptical that Congress intended that granting district courts the general authority to modify probation provisions would allow courts to bypass the much more specific scheme Congress created concerning modification of restitution." 715 F.3d 552, 558 (4th Cir. 2013). However, the court did not, ultimately, decide whether the district

23

court possessed authority outside of § 3664(o), because the district court's order was an abuse of discretion even assuming that it was empowered to issue it. Id.

Thus, we conclude that a district court may not modify a mandatory order of restitution unless one of the circumstances in § 3664(o) applies.[3] None of the circumstances listed in § 3664(o) apply in this case. Puentes's sentence was not "corrected under Rule 35," 18 U.S.C. § 3664(o)(1)(A); it was not "appealed and modified," id. § 3664(o)(1)(B); it was not "amended" upon discovery of additional losses by the victim, id. §§ 3664(o)(1)(C); it was not "adjusted" based on Puentes's economic circumstances, id. § 3664(o)(1)(D); and Puentes was not "resentenced" based on his failure to pay or some other violation of his terms of probation, id. §§ 3664(o)(2).

Nor do we think that the reference in § 3664(o)(1)(A) to Rule 35 can plausibly be read to include "reductions" as well as "corrections." Rule 35, titled "Correcting or Reducing a Sentence," contains two subsections that address different means by which a court can modify a defendant's sentence. Rule 35(a), subtitled "Correcting Clear Error," allows the court to "correct a sentence that resulted from arithmetical, technical, or other clear error." Rule 35(b), subtitled "Reducing a Sentence for Substantial Assistance," allows the court to "reduce a

---

[3] We need not, and do not, decide whether § 3664(o) constrains the court's authority to modify a non-mandatory restitution order.

sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person." Put simply, Rule 35 draws a distinction between a correction and a reduction of a defendant's sentence. The fact that § 3664(o) refers only to correcting a restitution sentence under Rule 35 suggests that a district court may not reduce a defendant's restitution under that same rule.

The distinction between correcting a sentence and reducing a sentence is a meaningful one. In fact, Rule 35 was amended in 1991 to change the title of subsection (b) from "Correction of Sentence for Changed Circumstances" to "Reduction of Sentence for Changed Circumstances." H.R. Doc. No. 102-78, at 22 (1991). As the notes of the Advisory Committee explain, this change was intended "to reflect that there is a difference between correcting an illegal or improper sentence, as in subsection (a), and reducing an otherwise legal sentence for special reasons under subsection (b)." Id. at 23. A Rule 35(b) reduction does not constitute a correction because it has nothing to do with any alleged errors in the original sentence; instead, it serves as a reward for the substantial assistance that the defendant subsequently provided to the government. In light of these differences, we conclude that Congress made an intentional choice to prohibit the courts from reducing a defendant's mandatory obligation to pay restitution on the basis of his substantial assistance.

25

Notably, Congress made a different choice in statutes governing other aspects of a defendant's sentence.  Thus, for example, a sentence of imprisonment is also a "final judgment," although it can be "corrected" pursuant to Rule 35.  18 U.S.C. § 3582(b).  However, unlike a mandatory restitution order, which may only be modified following an appeal, id. § 3664(o)(1)(B), a sentence of imprisonment may also be modified in a number of other ways, id. § 3582(b)(1), including under Rule 35, id. § 3582(c)(1)(B) ("[T]he court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure . . . .").  "[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  Keene Corp. v. United States, 508 U.S. 200, 208 (1993) (quotation omitted) (alterations in original).  Because Congress specifically permitted courts to reduce other aspects of a defendant's sentence under Rule 35(b), we do not think that Congress meant to authorize the reduction of a defendant's mandatory restitution as well.

We are unconvinced by Puentes's analogy to cases involving criminal fines. Just as with orders of restitution, federal law provides that a "sentence to pay a fine" is a final judgment, "notwithstanding the fact" that it may be "corrected under Rule 35."  18 U.S.C. § 3572(c).  Puentes cites three cases where courts have

held that Rule 35(b) permits the district court to reduce fines as part of a defendant's sentence.  See United States v. McMillan, 106 F.3d 322, 324 (10th Cir. 1997); United States v. Linker, 920 F.2d 1, 2 (7th Cir. 1990); United States v. Glantz, 884 F.2d 1483, 1488 (1st Cir. 1989).  Linker and Glantz, however, were decided before Rule 35(b) was amended to clarify that a motion to modify a sentence based on the defendant's substantial assistance is a motion for a reduction, not a correction.  McMillan, in turn, relied on Linker and Glantz.  106 F.3d at 324-25.  While McMillan noted the amendment to Rule 35(b), it provided no basis for its conclusion that the amendment did not affect the court's authority to reduce fines.  Id. at 324 n.7.  Additionally, it neither cited nor purported to interpret § 3572(c).  In any event, we find these cases unpersuasive, and decline to follow them.

As we see it, there are good reasons explaining why Congress did not allow a defendant's substantial assistance to affect his mandatory restitution obligation. To be sure, restitution is "penal, rather than compensatory."  United States v. Johnson, 983 F.2d 216, 220 (11th Cir. 1993).  As the Supreme Court and this Court have made clear, however, restitution also serves compensatory objectives, by returning a defendant's ill-gotten gains to the victims of his crimes.  See, e.g., Paroline v. United States, 134 S. Ct. 1710, 1726 (2014) ("The primary goal of restitution is remedial or compensatory, but it also serves punitive purposes."

27

(citations omitted)); <u>Dolan v. United States</u>, 560 U.S. 605, 613-14 (2010) ("[T]he [MVRA] also seeks to benefit [victims]."); <u>United States v. Browne</u>, 505 F.3d 1229, 1280-81 (11th Cir. 2007) ("[T]he focus of restitution is on the victim . . . ."). Puentes's assistance to the government in no way made the victims of <u>his</u> crime whole.

Finally, Puentes says that we are bound to apply the rule of lenity if we find any ambiguity in the Mandatory Victims Restitution Act, Rule 35(b), or the interplay between the two. "When ambiguity exists, the ambit of criminal statutes should be resolved in favor of lenity." <u>United States v. Izurieta</u>, 710 F.3d 1176, 1182 (11th Cir. 2013) (quotation omitted). The rule of lenity "vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed." <u>United States v. Santos</u>, 553 U.S. 507, 514 (2008) (plurality opinion). "The simple existence of some statutory ambiguity, however, is not sufficient to warrant application of that rule, for most statutes are ambiguous to some degree." <u>Muscarello v. United States</u>, 524 U.S. 125, 138 (1998). Rather, the rule of lenity applies only if there is a "grievous ambiguity or uncertainty in the statute." <u>Id.</u> at 138-39 (quotation omitted). Even if we assume, for the sake of argument, that the rule of lenity applies to § 3664(o) and Rule 35(b), which are procedural provisions that neither establish offenses nor mandate particular

28

punishments,[4] we find no ambiguity here.  The mere fact that the MVRA overrides the broader language of Rule 35 does not warrant application of the rule of lenity.

## V.

Thus, we conclude that the district court erred in eliminating Puentes's mandatory restitution obligation under Rule 35(b).  Under the Mandatory Victims Restitution Act, restitution was mandatory in Puentes's case notwithstanding any other provision of law, including Rule 35.  And, as we see it, a court may only alter a sentence imposing mandatory restitution in the limited circumstances set forth in 18 U.S.C. § 3664(o).  Those circumstances do not include reducing a defendant's restitution under Rule 35(b), in exchange for his substantial assistance.  And they do not include eliminating a defendant's restitution altogether because his co-defendants remain liable.  Accordingly, we reverse the district court's order and remand with instructions to reinstate Puentes's obligation to make restitution to his victims in the amount of $4,445,305.94.

**REVERSED in part AND REMANDED with instructions.**

---

[4] The Supreme Court has clarified that the rule of lenity "applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose." Bifulco v. United States, 447 U.S. 381, 387 (1980).  Section 3664(o) and Rule 35(b), however, only lay out procedures for modifying a criminal sentence.  Puentes does not point to a single decision of the Supreme Court or this Court applying the rule of lenity to such a procedural provision.

29