[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10052
Non-Argument Calendar
_____

D.C. Docket No. 0:89-cr-06049-UU-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES V. MONACO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 22, 2020)

Before BRANCH, LUCK, and FAY, Circuit Judges.

PER CURIAM:

James Monaco appeals the district court's denial of his motion for compassionate release under the First Step Act. See 18 U.S.C. § 3582(c)(1)(A)(i). Monaco raises three issues on appeal: whether the district court erred in concluding that he had not alleged extraordinary and compelling reasons making him eligible for compassionate release; whether the district court abused its discretion in concluding that, even if Monaco was eligible, compassionate release was not appropriate after considering the relevant factors; and whether the district court abused its discretion in denying Monaco's motion before he filed his reply to the government's written response. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

After a trial involving multiple co-defendants, Monaco was found guilty of ten counts, a combination of firearms and drug trafficking charges. According to the presentence investigation report, Monaco directed a "heroin and cocaine distribution ring," and his sins were many: Monaco supplied a kilogram of heroin to an undercover agent; attempted to steal 480 kilograms of cocaine from his rivals; "conspired to import 1500 pounds of cocaine and to steal 500 kilograms of it"[1]; was "responsible for 1154.3 grams of heroin"; "conspired to carry firearms and silencers during the theft of the cocaine"; and "discussed the going rate of 'murder contracts' with a coconspirator."

---

[1] 1500 pounds converts to approximately 680 kilograms.

2

Before the sentence hearing, the government filed a memorandum telling the district court that it had learned from "several confidential sources" and inmate Michael Guibilo that, after the trial, Monaco had solicited Guibilo to murder the prosecutor and a witness and to rob "a 'stash house' where several million dollars of drug proceeds [were] located." During a recorded conversation between Monaco and Guibilo, Monaco suggested that Guibilo should murder Monaco's prosecutor "as soon as possible" because, "[w]ithout her, we wouldn't be here." The two discussed how Guibilo would kill the prosecutor; Monaco told Guibilo her name; and—after Guibilo was released from custody—Guibilo sent Monaco a picture of the prosecutor, which Monaco confirmed in a coded message was a picture of his "old girlfriend." Concerning the planned stash house robbery, Monaco assured Guibilo that he could rely on another accomplice not to "go to the authorities" because Monaco had "whacked around twenty-five people with this guy." Guibilo and the accomplice would use Monaco's extensive weapons cache to "whack" the cartel members at the stash house. Based on this evidence, the district court assessed a two-point enhancement for obstruction of justice, resulting in a guideline range of 360 months to life in prison. After an appeal and remand, the district court ultimately sentenced Monaco to 660 months.

In September 2019, Monaco filed a motion for compassionate release, asserting as extraordinary and compelling reasons for a sentence reduction that he

was seventy years old and had a clean disciplinary record after serving thirty years of his sentence. The district court denied the motion, and Monaco now appeals.

## STANDARD OF REVIEW

"We review de novo . . . whether a district court had the authority to modify a term of imprisonment." United States v. Jones, 962 F.3d 1290, 1296 (11th Cir. 2020). "We review for abuse of discretion the denial of an eligible movant's request for a reduced sentence under the First Step Act." Id. And "[w]e review a district court's application of its local rules for an abuse of discretion." United States v. McLean, 802 F.3d 1228, 1233 (11th Cir. 2015).

## DISCUSSION

A district court may modify a sentence only if the modification is authorized by a statute or a rule. United States v. Puentes, 803 F.3d 597, 605–06 (11th Cir. 2015). Section 3582(c)(1)(A)(i), as amended by the First Step Act, allows a court to modify a prisoner's sentence "in any case" if:

> (A) the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).[2]

The "applicable policy statements issued by the Sentencing Commission" that the court must consider are in section 1B1.13 of the sentencing guidelines. Guideline section 1B1.13 says that "extraordinary and compelling reasons exist under" the following circumstances:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—
(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process,

---

[2] Monaco sought compassionate release based on subsections (i) and (ii) of 18 U.S.C. section 3582(c)(1)(A).  But Monaco has not appealed the part of the district court's order denying his motion based on subsection (ii). See United States v. Rosales-Bruno, 789 F.3d 1249, 1253 n.1 (11th Cir. 2015) ("Whatever his procedural objections were, Rosales-Bruno has abandoned them by not raising them on appeal.").  Monaco has probably abandoned his subsection (ii) appeal because that subsection allows for compassionate release only where the defendant is at least seventy years old, has served at least thirty years in prison "pursuant to a sentence imposed under section 3559(c)," and the Bureau of Prisons has determined that he is not a danger to the safety of any other person or the community. See 18 U.S.C. § 3582(c)(1)(A)(ii).  Because Monaco was not sentenced under the three-strikes provision in section 3559(c), he was not eligible for compassionate release under subsection (ii).

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—
(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

Thus, a defendant is eligible for compassionate release if the district court finds "extraordinary and compelling reasons" that are "consistent with the . . . policy statements" in guideline section 1B1.13.  If there are "extraordinary and compelling reasons" for compassionate release, the district court has the discretion to reduce the defendant's term of imprisonment after considering the applicable section 3553(a) factors.

Here, the district court concluded that Monaco wasn't eligible for compassionate release because his motion did not allege an extraordinary and compelling reason.  And, having considered the relevant factors, the district court

alternatively concluded that even if Monaco was eligible for compassionate release, it would not be "appropriate" in his case because he was "a danger to any person or to the community," in his forties Monaco "solicited murders and obstructed justice," and there was a substantial risk he would engage in criminal conduct if he was released. Monaco attacks both conclusions on appeal.

*Extraordinary and Compelling Reason*

Monaco first argues that the district court erred in concluding that Monaco was not eligible for compassionate release because he "failed to assert an extraordinary [and] compelling reason justifying compassionate relief within the meaning of U.S.S.G. [section] 1B1.13." Monaco contends that age alone is an extraordinary and compelling reason because the body and mind deteriorate over time.

The policy statements in guideline section 1B1.13 list "Age of the Defendant" as an extraordinary and compelling reason for compassionate release. But age, without more, is not enough. The policy statements say that the "Age of the Defendant" is an extraordinary and compelling reason only where the defendant is at least sixty-five years old, is "experiencing a serious deterioration in physical or mental health because of the aging process," and has "served at least [ten] years or [seventy-five] percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13 cmt. n.1. In his compassionate release motion, Monaco requested

7

a reduced sentence because of his age, the amount of time he had already served in prison, and his good behavior in prison. But, as the district court explained, Monaco did not allege that he experienced a serious deterioration in physical or mental health because of the aging process. Monaco argues that the body and mind deteriorate over time—and indeed they do—but until he has actually experienced a "serious deterioration" because of the aging process, the policy statements do not support age alone as an extraordinary and compelling reason for compassionate release.

*Section 3553(a) Factors*

Monaco also argues that the district court abused its discretion in alternatively concluding, as part of its consideration of the section 3553(a) factors, that he posed a danger to any person or to the community.[3] He contends that because some of the people involved in his trial have died, his attempts to solicit the murder of the prosecutor and a witness do not support the district court's finding that he's still a danger.

Section 3553(a) requires the district court to consider (among other factors) "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to reflect the seriousness

---

[3] The district court does not have to mention section 3553(a) to consider the relevant factors. See United States v. Cabezas-Montano, 949 F.3d 567, 609 (11th Cir. 2020) ("When the district court fails to mention the [section] 3553(a) factors, we look to the record to see if the district court did, in fact, consider the relevant factors."). Here, the record is clear that the court did consider the relevant factors in determining that compassionate release was not appropriate.

8

of the offense, to promote respect for the law, . . . to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." See 18 U.S.C. § 3553(a)(1)–(2). Here, the district court "considered the substantial record" and the "recent findings" by the Bureau of Prisons in concluding compassionate release was not appropriate because Monaco solicited murders and obstructed justice while in his forties, he still posed a risk of danger to the community, and there was a substantial risk that he would engage in criminal conduct if released.

The record supports the district court's conclusions. Monaco directed a heroin and cocaine distribution ring in which he was "responsible for 1154.3 grams of heroin" and "conspired to import 1500 pounds of cocaine and to steal 500 kilograms of it." He bragged on tape that he committed numerous murders. While in custody, as he is now, Monaco tried to orchestrate the robbery of a rival cartel's stash house and the murder of those inside. And he solicited the murder of the prosecutor and a witness because he thought his charges would go away. The warden of Monaco's prison, who has known him best since he was sentenced to prison, found that releasing Monaco would "generate a substantial risk of [his] engaging in criminal conduct or . . . endangering any person or public." Based on this record, the district court did not abuse its discretion in concluding that reducing Monaco's sentence, even if he was eligible for compassionate release, was not appropriate.

*Untimeliness of Reply*

Monaco finally argues that the district court abused its discretion when it entered its order denying his motion for compassionate release before he filed his reply to the government's memorandum opposing his motion.  Monaco concedes that he missed the deadline for filing a reply but contends that he did not receive the government's memorandum until after the deadline had passed.

The local rules for the Southern District of Florida give a movant seven days "after filing and service of an opposing memorandum of law" to "file and serve a reply memorandum in support of the motion."  S.D. Fla. L. R. 7.1(c)(1).  Here, thirteen days had passed with no reply before the district court entered its order.  The district court had no way of knowing that Monaco had not received the government's response.  Monaco did not, as he could have, move the district court for reconsideration of its order or move for leave to file an untimely reply.

As we've explained, we "will not typically second-guess the district court's interpretation of its own Rule regarding timeliness in an effort to avoid undermining the goal of those standards that local rules seek to establish."  McLean, 802 F.3d at 1247 (quotation marks omitted and alterations adopted).  We too will give wide discretion to the district court's reading and application of its local rule, and we will not hold that the district court abused its discretion in failing to wait for a reply it couldn't and didn't know was coming.

10

**AFFIRMED.**