[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13098
Non-Argument Calendar

_____

D.C. Docket No. 2:18-cr-00255-LSC-SGC-1

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

versus

MARIO DAMON WREN,

                                        Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(March 31, 2021)

Before NEWSOM, ANDERSON and DUBINA, Circuit Judges.

PER CURIAM:

Appellant Mario Damon Wren, a federal prisoner, appeals the district court's order denying his motion for a sentence reduction based on compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by Section 603(b) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).  On appeal, Wren argues that the district court erred as a matter of law by analyzing his motion using the policy statement in U.S.S.G. § 1B1.13 because the policy statement has not been updated since the implementation of the First Step Act and thus is not applicable.  He also argues that the district court's error was not harmless because it predominated the district court's analysis of the 18 U.S.C. § 3553(a) factors, specifically whether Wren posed a danger to the community.  Additionally, Wren contends that the district court's denial of his motion was an abuse of discretion because the district court failed to set forth adequate reasoning to demonstrate its due consideration of the factors, precluding meaningful appellate review.  After reading the parties' briefs and reviewing the record, we affirm.

**I.**

In 2018, a grand jury charged Wren with three counts of unlawfully possessing a firearm subsequent to a felony conviction, in violation of 18 U.S.C. § 922(g)(1) (Counts 1-3), one count of possessing various controlled substances with the intent to distribute them, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and (b)(2) (Count 4), and one count of knowingly possessing a firearm in

furtherance of a drug trafficking crime, specifically that alleged in Count 4, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 5).  Wren pled guilty to Counts 1 and 5 pursuant to a written agreement with the government.

The probation officer summarized Wren's offense conduct in the presentence investigation report ("PSI") as follows: Wren had an active arrest warrant and, in September 2017, law enforcement received information that Wren was staying at a motel in Bessemer, Alabama.  Officers surveilled and then arrested Wren on the outstanding warrant.  A search of his person and the motel room yielded hydrocodone pills, digital scales, ammunition, marijuana, heroin, methamphetamine, crack cocaine, Clonazepam pills, suspected ecstasy, and several firearms.  At the time, Wren was a convicted felon.  The PSI also reported that in March 2018, Wren was in a vehicle that police officers stopped for an expired Alabama automobile tag.  The officers observed an open container in the car and ordered all occupants to exit the vehicle.  Wren told the police officer that he was in possession of a pistol that was lying on the backseat.  At the time of this offense, Wren was a convicted felon.

The PSI provided information regarding Wren's adult criminal convictions. In 1995, Wren pled guilty to possession of a controlled substance and marijuana and trafficking cocaine and served four years in prison; in 2001, Wren was charged with possession of a controlled substance and pled guilty in 2004; in 2007, Wren

pled guilty to fraudulent use of a credit card and obstructing government operations; in 2010, officials arrested Wren for second-degree theft of property; and in 2011, officials arrested Wren for possession of a controlled substance. He ultimately pled guilty to the 2010 and 2011 offenses and served 12 years in prison. The probation officer calculated Wren's total offense level as 17, criminal history category as II, and guideline imprisonment range from 27 to 33 months as to Count 1 and 60 months consecutive as to Count 5. In February 2019, the district court sentenced Wren to 33 months on Count 1 and 60 months on Count 5, to run consecutively, followed by a term of supervised release of 36 months as to Count 1 and 60 months as to Count 5, to run concurrently.

In June 2020, Wren filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), requesting that the district court reduce his prison sentence based on the public health crisis created by COVID-19. He noted that he had Type 1 diabetes, a history of heart-related problems, and sickle-cell anemia, and he asserted that these long-term health conditions weakened his immune system and made him more likely to contract COVID-19. He noted that he had tested positive for COVID-19 once, and he was concerned that a second infection could be deadly. He stated that he had a support system at home, had available employment and could receive better treatment for his conditions if he was released from prison. The district court denied the motion, finding that Wren had

4

not exhausted his administrative remedies because the record did not show that he had filed a compassionate release request with the warden and there was no indication that the warden had responded to or denied his request.  (R. Doc. 29.)

The district court also found that, even if Wren had exhausted his administrative remedies or it could waive exhaustion, Wren failed to demonstrate extraordinary and compelling reasons to reduce his sentence.  The district court noted that Wren did not suffer from any condition from which he was not expected to recover, as is referenced in U.S.S.G. § 1B1.13, comment. (n.1).  It also noted that Wren failed to provide documentation that he suffered from any of the medical conditions he listed in his motion, and that the PSI stated Wren had Type II diabetes, not Type I.  It further noted that Wren had contracted COVID-19 once, and Wren did not provide evidence that he was still suffering from the virus or had ill effects from the virus.  The district court thus concluded that, based on the record, it did not appear that Wren would be safer health-wise if he were released from prison.  As such, the district court found that Wren did not present extraordinary and compelling circumstances to warrant a reduction.

Furthermore, the district court concluded that, even if Wren could show extraordinary and compelling circumstances to warrant a sentence reduction, the guidelines and the 18 U.S.C. § 3553(a) factors weigh against compassionate release.  It noted that U.S.S.G. § 1B1.13(2) requires that the defendant not be a

danger to the safety of any person or to the community, and the PSI's description of Wren's multiple arrests and criminal history shows that he is a recidivism risk. The district court further noted that Wren has at least seven prior convictions, most of which included illegal possession of guns and drugs as well as theft; he has a criminal history of II despite his relatively young age; and it appears that there have been few months since 1992 when Wren was not incarcerated or on probation. The district court referenced 18 U.S.C. § 3142(g), which was incorporated by reference into § 1B1.13(2) and included as a factor whether the defendant possessed a firearm and noted that Wren did possess a firearm and thus posed a risk of danger to the community. Lastly, the district court noted that Wren had not served half of his 93-month term of incarceration.

Wren moved, through counsel, for the district court to reconsider its denial of his motion for compassionate release. On August 4, 2020, the district court denied his motion for reconsideration of its denial of his request for compassionate release. (R. Doc. 33.) It did conclude that Wren had satisfied the 30-day exhaustion requirement, but it found that Wren had failed to demonstrate extraordinary and compelling reasons to reduce his sentence under the applicable policy statement in § 1B1.13. Alternatively, the district court concluded that if Wren had shown extraordinary and compelling reasons for a sentence reduction, the guidelines and the § 3553(a) factors weigh against compassionate release,

6

reiterating its prior reasons for denying Wren's request.  It stated that to reduce

Wren's sentence as he requested "would be diminishing his transgressions and

undermining the goals of the original sentence, among them, the need to dispense

adequate punishment for [Wren]'s multiple acts throughout his criminal career and

to deter others from emulating his behavior."  (R. *Id.* at 10.)[1]

## II.

We review a district court's denial of a prisoner's § 3582(c)(1)(A) motion

for abuse of discretion.  *United States v. Harris*, ___ F.3d ___, ___, No. 20-12023,

2021 WL 745262 (11th Cir. March 2, 2021).  The district court abuses its

discretion if it applies an incorrect legal standard, follows improper procedures in

making the determination, or makes clearly erroneous factual findings.  *United*

*States v. Barrington*, 648 F.3d 1178, 1194 (11th Cir. 2011).  A district court also

abuses its discretion when it commits a clear error of judgment.  *United States v.*

*Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005).  When we review for abuse of

discretion only, we will not reverse a district court's judgment because we may

---

[1] Wren's notice of appeal designates the order denying his motion to reconsider compassionate release as the order from which he is appealing.  This notice did not refer to the district court's initial order denying his motion for a sentence reduction.  We need not determine which order he challenges on appeal because the district court's reasoning in both orders was substantively the same, except for the district court's finding on reconsideration that Wren exhausted his administrative remedies, which is not at issue on appeal.  *See Wainwright v. Sec., Dep't of Corrs.*, 537 F.3d 1282, 1284–85 (11th Cir. 2007) (notice of appeal designated Rule 59(e) motion but arguments in motion were clearly intended to appeal district court's summary judgment order and were intertwined with arguments made in opposition to motion for summary judgment).

have concluded contrary to the district court had it been our decision and the district court had a range of choices. *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004).

## III.

Wren asserts on appeal that the district court erred in denying his motion for reconsideration of his motion for a sentence reduction based on compassionate release because his diabetes is a recognized risk factor for COVID-19, the prison had an outbreak of COVID-19 cases, he had tested positive for the virus once, and was at an increased risk of contracting a second infection that could be deadly. He contends that the district court erroneously tethered its analysis to the U.S.S.G. § 1B1.13 policy statement, which has not been updated since the First Step Act was implemented. He further argues that, even if the district court did not err by applying § 1B1.13, its denial was an abuse of discretion because it failed to set forth adequate reasoning to demonstrate its due consideration, precluding meaningful appellate review.

It is well established that a district court has no inherent authority to modify a defendant's sentence and may do so "only when authorized by a statute or rule." *United States v. Puentes*, 803 F.3d 597, 605–06 (11th Cir. 2015). Prior to the enactment of the First Step Act, the statute allowed the district court to reduce a prisoner's term of imprisonment upon motion of the Director of the Bureau of

Prisons ("BOP"), after the court considered the factors set forth in section 3553(a), if it found that extraordinary and compelling reasons warranted such a reduction. *See* 18 U.S.C. § 3582(c)(1)(A). The First Step Act amended the statute to allow the court to reduce a defendant's term of imprisonment also upon motion of the defendant, after the defendant fully exhausts all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. *See* First Step Act § 603; 18 U.S.C. § 3582(c)(1)(A). The court must find that extraordinary and compelling reasons warrant such a reduction, consider the § 3553(a) factors, and find that a reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*.

The policy statements applicable to § 3582(c)(a)(A) are found in U.S.S.G. § 1B1.13, which has not been amended since the First Step Act was passed and refers only to a sentence reduction upon a motion from the BOP Director. *See* U.S.S.G. § 1B1.13. The attendant commentary states that extraordinary and compelling reasons exist under any of the circumstances listed, provided that the court determines that the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). *See* U.S.S.G. § 1B1.13, comment. (n.1). The commentary lists a defendant's medical condition as a possible "extraordinary and compelling reason" warranting a sentence reduction if

9

he (1) has a terminal disease or (2) is suffering from a physical or mental condition that diminishes his ability to provide self-care in prison and from which he is not expected to recover. *Id.*, comment. (n.1(A)). The commentary also contains a catch-all provision for "other reasons," which provides that a prisoner may be eligible for a sentence reduction if "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," the other specific examples listed. *Id.*, comment. (n.1(D)).

Section 1B1.13(2) requires that the district court must determine that the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g), for it to grant a motion for compassionate release. Section 3142(g) lists several factors for the district court to consider in determining whether a defendant is a danger to another person or the community, including (1) the nature and circumstances of the offense charged, including whether the offense involved a firearm; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including their criminal history and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense; and (4) the nature and seriousness of the danger to any

10

person or the community that would be posed by the person's release.  18 U.S.C. § 3142(g)(1)-(4).

In situations where the district court must consider the § 3553(a) factors, it is not necessary for the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each one of the factors. *United States v. Kuhlman*, 711 F.3d 1321, 1326 (11th Cir. 2013).  Instead, an acknowledgement by the district court that it considered the § 3553(a) factors is sufficient.  *United States v. Turner*, 474 F.3d 1265, 1281 (11th Cir. 2007).  An appellate court may affirm a sentence when the record indicates that the district court considered some of the factors.  *See United States v. Dorman*, 488 F.3d 936, 944 (11th Cir. 2007) (affirming appellant's sentence because even though the district court did not discuss each of the sentencing factors, the record showed that it considered several of them).  Moreover, the weight given to any of the § 3553(a) factors is committed to the sound discretion of the district court.  *United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016).

Under § 3553(a), a district court's sentence must be sufficient, but not greater than necessary, to achieve the goals of sentencing, which are: reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, deterring future criminal conduct, protecting the public, and providing the defendant with any needed training or treatment.  18 U.S.C. § 3553(a)(2)(A)-

(D). This section also requires district courts to consider the nature and circumstances of the offense, the defendant's history and characteristics, the kinds of sentences available, the Sentencing Guidelines, any pertinent policy statements, the need to avoid disparate sentences for defendants with similar records, and the need to provide restitution to any victims. *Id.* § 3553(a)(1), (3)-(7). A district court must explain its sentencing decisions adequately to allow for meaningful appellate review. *Gall v. United States*, 552 U.S. 38, 50, 128 S. Ct. 586, 597 (2007).

## IV.

Based on our review of the record, we conclude that the district court did not err in denying Wren's motion for compassionate release. Contrary to Wren's contention, the district court's order was explicit that even if extraordinary and compelling reasons existed, guideline § 1B1.13 and the § 3553(a) factors weighed against granting his motion for compassionate release. This indicates that the district court would have denied the motion based on these considerations independent from its decision as to whether Wren had shown extraordinary and compelling reasons for release.

Wren also argues that we cannot affirm on these alternative bases because that portion of the district court's analysis was too affected by its reliance on the outdated and inapplicable policy statements in § 1B1.13, comment. (n.1). Based

on our review, however, the only portion of that guideline that the district court cited for its alternative holdings was § 1B1.13(2), the applicability of which Wren does not challenge on appeal.  Rather, in relying on § 1B1.13(2), the district court analyzed the factors incorporated by reference from § 3142(g), the applicability of which Wren also does not challenge on appeal.

Further, we conclude that the district court's analysis of the extraordinary and compelling reasons, its consideration of whether Wren was a danger to the community pursuant to § 1B1.13(2), and the § 3553(a) factors each involved separate considerations, such that the district court's application of the policy statements, even if improper, did not taint its reasoning on the other two grounds for its decision.  The district court found that, even if Wren had demonstrated extraordinary and compelling reasons for compassionate release, he was a "recidivism risk." (R. Doc. 33 at 8–9.)  The court acknowledged that Wren's current firearm and drug-related convictions were not his first; rather, they were part of a decades-long criminal career.  These findings by the district court reflect its consideration of the need to protect the public from future crimes by Wren.  Wren's criminal career was also part of the district court's consideration of his history and characteristics, which it found warranted more than the fraction of the sentence Wren had served to that date.  The court concluded that reducing Wren's term of imprisonment would "diminish his transgressions and undermine the goals

13

of the original sentence," including deterring other people from "emulating his behavior." (R. *Id.* at 10.)

In sum, we conclude from the record that the district court properly denied Wren's motion for a sentence reduction based on compassionate release. The district court properly exercised its discretion in determining that Wren did not meet the § 3553(a) prong of the compassionate-release analysis, even if he had demonstrated extraordinary and compelling reasons. Because Wren must show both, and a lack of danger, to secure release, we need not resolve Wren's argument about the source of the definition for "extraordinary and compelling reasons."[2]

Accordingly, based on the aforementioned reasons, we affirm the district court's order denying Wren's motion to reconsider its motion denying a sentence reduction based on compassionate release.

**AFFIRMED**.

---

[2] Because the district court in this case found that the § 3553(a) factors weighed against granting Wren compassionate release, we can affirm on that basis without deciding whether U.S.S.G. § 1B1.13 governs the definition of "extraordinary and compelling reasons" in an inmate-initiated compassionate release motion. Further, we note several cases are pending in our circuit that involve the issue of whether the district court is restricted by the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13, comment. (n.1), the definition of "extraordinary and compelling circumstances," and whether a district court is required to consider the § 3553(a) factors before denying a motion for compassionate release. *See e.g., United States v.* Cook, No. 20-13293, United *States v. Bryant*, No. 19-14267; *United States v. McKreith*, No. 20-10450, *United States v. Friedlander*, No. 19-13347, and *United States v. Kinsey*, No. 20-11208.