[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14266

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

BRESHAWN HAMILTON,
a.k.a. 2k20wit_rabbitt,
a.k.a. rabbitt1340000,
a.k.a. keysavage_22,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:21-cr-60010-RS-1

_____

Before ROSENBAUM, JILL PRYOR, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

Breshawn Hamilton appeals his total 40-year sentence and lifetime term of supervised release, imposed after he pleaded guilty to various counts of enticing a minor to engage in sexual activity, sending extortionate interstate communications, and possessing and producing child pornography. On appeal, he argues that the District Court erred in applying an enhancement pursuant to U.S.S.G. § 2G2.1(b)(4). The government responds that even if the District Court erred, the alleged error in calculating Hamilton's guideline range was harmless because his total offense level would have remained the same without the enhancement. Hamilton also contends that the District Court erred by failing to separately state its reasons for imposing a lifetime term of supervised release. For the reasons explained below, we affirm the District Court's sentence.

## I.

A grand jury in the Southern District of Florida returned a 20-count superseding indictment against Breshawn Hamilton in 2021. The grand jury indicted Hamilton on: five counts of enticement of a minor, in violation of 18 U.S.C. § 2422(b) (Counts 1

through 5); five counts of production of child pornography, in violation of 18 U.S.C. § 2251(a) (Counts 6 through 10); three counts of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Counts 11 through 13); two counts of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Counts 14 and 15); three counts of sending extortionate interstate communications, in violation of 18 U.S.C. § 875(d) (Counts 16 through 19); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count 20).

Hamilton pleaded guilty to Counts 1, 3, 6, 8, 9, 10, 16, 18, 19, and 20. In exchange, the remaining charges (Counts 2, 4, 5, 7, 11–15, and 17) were to be dismissed after sentencing. The District Court accepted the plea and adjudged Hamilton guilty.

The probation office created a presentence investigation report ("PSR") pertaining to Hamilton. In calculating Hamilton's offense level, the PSR grouped Counts 1 and 16 into "Count Group 1" because they involved the same victim, Victim 1. Likewise, Counts 9 and 18 were grouped into "Count Group 2," as both pertained to Victim 5. The remaining counts were not grouped, and each formed a "Count Group" on its own, each dealing with Hamilton's conduct towards a specific and distinct victim.

The offense levels for each Count Group are summarized below[1]:

---

[1] The instant appeal only involves the calculation of the base offense level for Count Group 8. For that reason, we do not explain how the base offense level

| Count Group | Adjusted Offense Level |
|---|---|
| 1 | 40 |
| 2 | 38 |
| 3 | 40 |
| 4 | 38 |
| 5 | 40 |
| 6 | 40 |
| 7 | 18 |
| 8 | 46 |

Count Group 8 contained Count 20 of the Indictment—possession of material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(4)(B). The base offense level for a violation of § 2252(a)(4)(B) is 32.[2] Pursuant to § 2G2.1(b)(1), the PSR assessed a four-level increase because the offense involved a minor who was under 12 years old. The PSR also assigned Hamilton a two-level increase under § 2G2.1(b)(2)(A) because the offense involved the commission of a sexual act or sexual contact, a two-level increase under § 2G2.1(b)(3) for knowingly engaging in distribution, and a two-level increase under § 2G2.1(b)(6)(B) because the offense involved the use of a computer or an interactive computer

_____

for each count group was calculated. Because the calculation of Count Group 8 is pertinent to Hamilton's appeal, we do discuss in detail how that base offense level was calculated.

[2] The guideline for a violation of 18 U.S.C. § 2252(a)(4)(B) is U.S.S.G. § 2G2.2. The cross-reference at § 2G2.2(c)(1) is applicable here, which resulted in a base offense level of 32 under § 2G2.1(a).]

service to engage in sexually explicit conduct with a minor.  Finally, as relevant here, the PSR enhanced Hamilton's base offense level by four levels because "the offense involved material that portray[ed] (A) sadistic or masochistic conduct or other depictions of violence; or (B) sexual abuse or exploitation of an infant or toddler."  § 2G2.2(b)(4).  These enhancements resulted in an adjusted offense level of 46 for Count Group 8.

Starting with Count Group 8, which was the highest offense level, the PSR then calculated the combined adjusted offense level for all count groups using § 3D1.4.[3]  This four-level increase led to a combined adjusted offense level of 50.  Under § 4B1.5(b)(1), that combined adjusted offense level received a five-level enhancement because Hamilton was a repeat and dangerous sex offender against minors.  Hamilton also received a reduction of three levels for acceptance of responsibility under § 3E1.1.  Hamilton's final total offense level was 52; however, pursuant to Chapter 5, Part A, of the Sentencing Guidelines, in instances where the total offense level is calculated in excess of 43, the offense level is to be treated as level 43, so the PSR listed Hamilton's total offense level as 43.

Hamilton had zero criminal history points, which equated to a criminal history category of I.  Based on a total offense level of 43 and a criminal history category of I, the guideline imprisonment

---

[3] Under U.S.S.G. § 3D1.4(a), "the combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level" as described in below.  *See* section II, *infra.*

6                          Opinion of the Court                    21-14266

term, according to the PSR, was life.  The guideline range for supervised release was five years to life.

Hamilton filed numerous objections to the PSR.  As relevant here, he objected to the enhancement for engaging in sadistic or masochistic conduct under § 2G2.1(b)(4), arguing that there was no evidence to support that enhancement.  The government did not specifically address this objection in its response, simply saying: "See previous responses in opposition to Hamilton's earlier objections."[4]

At sentencing, Hamilton's counsel objected to the computations of his total offense level, but agreed with the statutory maximums for the charges.  The government maintained that Hamilton's offense level was properly calculated.  The government further requested that the District Court overrule all of Hamilton's objections to the PSR and impose a sentence of life.  The Court overruled Hamilton's objections to the PSR.

After affording Hamilton his right of allocution, the Court imposed its sentence.  The Court said:

> These were children involved here. . . . And I do have
> to consider still the factors under [18 U.S.C. §] 3553
> and also with respect to that he was 19 or 20, his age,
> but yet also the allegation that he has been a victim of
> sexual assault himself.

---

[4]  It is unclear which responses the government was referring to with this statement, which also applied to 23 other objections made by Hamilton.

Hamilton's age and status as a sexual assault victim, however, did not mitigate "the totality of the circumstances." The Court also remarked that while Hamilton was a first-time offender, he was also not a "first time offender in the true sense" because there were seven young girls who had been victimized by Hamilton over a period of time.

The Court stated that it would not grant Hamilton's request for the statutory minimum sentence, but it did not feel that a life sentence was appropriate either, given Hamilton's age and history. According to the Court, its job was to "sentence [Hamilton] to a sufficient time I think is reasonable, sufficient but not greater than necessary to achieve the factors, [and] that's what I'm going to do." The Court "considered the statements of all the parties, the presentence report, which contains the advisory guidelines and the statutory factors as set forth in 18 United States Code Section 3553(a)."

The District Court sentenced Hamilton to 40 years' imprisonment—40 years for each of Counts 1 and 3; 30 years each for Counts 6, 8, 9, and 10; two years for each of Counts 16, 18, and 19; and 20 years for Count 20, all to be served concurrently. Upon release from prison, Hamilton would be placed on supervised release for a term of life. The Court asked the parties if there were objections to the Court's findings of fact or to the way the sentence was pronounced; defense counsel renewed its previously made objections but otherwise made no additional objections. Final judgment was entered against Hamilton.

Hamilton timely appealed.  He raises two arguments on appeal.  The first is that the District Court erred in overruling his objection to the four-level increase under U.S.S.G. § 2G2.1(b)(4) because he claims there was no evidence that the offense involved material portraying "sadistic or masochistic conduct or other depictions of violence" or "sexual abuse or exploitation of an infant or toddler." § 2G2.1(b)(4).  Second, Hamilton argues—for the first time on appeal—that the District Court erred because it did not state its reasons for imposing a term of supervised release of life.  We address each argument in turn.

## II.

Hamilton's first argument on appeal—that the District Court erred in overruling his objection to the four-level increase in his base offense level under U.S.S.G. § 2G2.1(b)(4)—is a challenge to the procedural reasonableness of his sentence.  We review a sentence's reasonableness for abuse of discretion, regardless of whether that sentence falls inside or outside of the guideline range.  *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).

To be procedurally reasonable, a district court must properly calculate the guideline range, treat the Sentencing Guidelines as advisory, consider the § 3553(a) factors, not consider clearly erroneous facts, and adequately explain the chosen sentence.  *Id.*  Because the Guidelines treat any offense level over 43 as being 43, an erroneous application of the Guidelines is harmless if the offense level otherwise stays above 43.  *United States v. Sarras*, 575 F.3d

1191, 1220 n.39 (11th Cir. 2009); *United States v. Sanchez*, 30 F.4th 1063, 1076 (11th Cir. 2022).

Under the 2018 Sentencing Guidelines Manual, when determining the combined offense level, the district court must determine the number of units by counting the highest offense level as one unit. U.S.S.G. § 3D1.4(a) (2018). The court must then count any offense levels one to four levels less serious than the highest offense as one unit and any offense levels five to eight levels less serious as one-half unit. *Id.* §§ 3D1.4(a), (b). Any count group that is nine or more levels less serious than the count group with the highest offense level is disregarded and will not increase the applicable offense level. *Id.* § 3D1.4(c). Where the number of units is more than five, five levels should be added to the highest offense level. *Id.* In a case where the defendant's offense is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct, a five-level increase applies.[5] *Id.* § 4B1.5(b)(1). Any offense level that exceeds 43 is treated as an offense level of 43. *Id.*, Ch. 5, Part A, cmt. (n.2).

Although the guideline provision applicable to a defendant convicted of violating 18 U.S.C. § 2252(a)(4)(B) is ordinarily U.S.S.G. § 2G2.2, "[i]f the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of

---

[5] U.S.S.G. § 4B1.5(b)(1) only applies in cases where neither § 4B1.1 nor § 4B1.5(a) apply. Neither of those guidelines are applicable to Hamilton.

producing a visual depiction of such conduct," § 2G2.1 applies via cross-reference.[6]  *Id.* §§ 2G2.2(a), (c)(1).  Under Application Note 7 to § 2G2.2, the cross-reference in subsection (c)(1) is "to be construed broadly and includes all instances where the offense involved employing, using, persuading, inducing, enticing, coercing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct."  *Id.* § 2G2.2, cmt. (n.7).

Section 2G2.1 provides for a base offense level of 32.  *Id.* § 2G2.1(a).  A four-level enhancement applies if the offense involved a minor under the age of 12.  *Id.* § 2G2.1(b)(1)(A).  A two-level enhancement applies if the offense involved the commission of sexual contact.  *Id.* § 2G2.1(b)(2)(A).  If the offense involved material that portrays either "(A) sadistic or masochistic conduct or other depictions of violence; or (B) an infant or toddler," the offense level is increased by four levels.  *Id.* § 2G2.1(b)(4).  A two-level enhancement applies if the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of a minor to engage in sexually explicit conduct or to otherwise solicit participation by a minor in such conduct.  *Id.* § 2G2.1(b)(6)(B).

---

[6] The cross-reference only applies if the resulting offense level under § 2G2.1 is greater than under § 2G2.2.  U.S.S.G. § 2G2.2(c)(1).

Here, we need not address Hamilton's claim that his conduct did not merit an enhancement under U.S.S.G. § 2D2.1(b)(4). Even if we assume that Hamilton is correct and recalculate his total offense level without the § 2D2.1(b)(4) enhancement, his total offense level would still be above the maximum contemplated by the Guidelines, resulting in the same advisory guideline range of 43. Section 2G2.1's base level applies given Hamilton falls within the cross-reference from § 2G2.2(c)(1) to § 2G2.1, which Hamilton does not contest. The base level for Count Group 8 would still be 32 under § 2G2.1(a). Hamilton would still have received a four-level enhancement under § 2G2.1(b)(1), a two-level enhancement under § 2G2.1(b)(2)(A), a two-level enhancement under § 2G2.1(b)(3), and a two-level enhancement under § 2G2.1(b)(6)(B). This would make his subtotal for that count group 42. Based on § 3D1.4, the total number of units and resulting increase in offense level would still be four. When added to the greater adjusted base level, the resulting combined total would be 46.

Hamilton would still have received a five-level enhancement for engaging in a pattern of activity involving prohibited sexual conduct under § 4B1.5(b)(1) and a three-level reduction for acceptance of responsibility under §§ 3E1.1(a) and (b). This would

bring his total offense level to 48.[7]    With or without the § 2D2.1(b)(4) enhancement, then, Hamilton's total offense level is above 43—the maximum level contemplated by the Guidelines.  As such, any error the District Court may have made in calculating Hamilton's total offense level was harmless.

### III.

We now turn to Hamilton's second challenge—that the District Court failed to state its reasons for the supervised release term it imposed, as Hamilton claims is required by 18 U.S.C. § 3553(c)(1).  A defendant's challenge to a district court's failure to comply with 18 U.S.C. § 3553(c)(1) is reviewed *de novo*, even if the defendant did not object below.  *United States v. Bonilla*, 463 F.3d 1176, 1181 (11th Cir. 2006); *United States v. Woodson*, 30 F.4th 1295, 1307–08 (11th Cir. 2022).

If a sentence is of the kind and within the range recommended by the Guidelines, and that range exceeds 24 months, § 3553(c)(1) requires a district court to state in open court the reasons for imposing its sentence at a particular point within the range.  18 U.S.C. § 3553(c)(1).  The district court is not required to state on the record that it has explicitly considered each of the § 3553(a) factors or discuss each of them.  *United States v. Kuhlman*, 711 F.3d 1321, 1326 (11th Cir. 2013).  "The sentencing

---

[7] Because Hamilton's situation is one of the "rare cases" where a total offense level of more than 43 resulted from the Guidelines, his offense level would be treated as 43.  U.S.S.G. Ch. 5, Pt. A, cmt. (n.2).

judge should set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468 (2007). A district court's explanation of a sentence may be brief and may derive substance from the context of the record, the defendant's history and characteristics, and the parties' arguments. *Id.* at 356–58, 127 S. Ct. at 2468–69. In determining whether a district court's statement of reasons complies with § 3553(c), we do not rely solely on the court's summary statement at the close of the hearing but will instead review "the transcript of the sentencing hearing and . . . what transpired, taken together with the court's closing remarks." *United States v. Parrado*, 911 F.2d 1567, 1573 (11th Cir. 1990).

We have not held, in a published decision, that 18 U.S.C. § 3553(c)(1) applies explicitly to terms of supervised release.[8] Section 3553(c) states that "[t]he court, at the time of sentencing, shall state in open court the reasons for its imposition of *the* particular sentence." § 3553(c) (emphasis added). And according to 18 U.S.C.

---

[8] We have, however, applied § 3553(c) to a term of supervised release in unpublished opinions. *See, e.g.*, *United States v. Russell*, 754 F. App'x 858, 862 (11th Cir. 2018). But in similar unpublished opinions, we have also applied the plain error standard rather than *de novo* review. *See, e.g.*, *United States v. Washington*, 626 F. App'x 845, 847 (11th Cir. 2015) (holding that the district court did not plainly err by failing to explain its decision to impose a three-year term of supervised release separately from its decision to sentence the defendant to 37 months' imprisonment).

14                  Opinion of the Court                  21-14266

§ 3583(a), a district court "may include as a part of *the* sentence a requirement that the defendant be placed on a term of supervised release after imprisonment. . . ." § 3583(a) (emphasis added). Supervised release, then, is one component of *the* sentence imposed by a district court.[9]  Because § 3553(c) applies to the entire sentence, and the term of supervised release is part of that sentence, § 3553(c) necessarily applies to the term of supervised release as part of the sentence imposed. And under our decisions in *Bonilla* and *Woodson*, we review challenges to a district court's compliance with § 3553(c) *de novo*, even if, as here, the defendant did not raise that argument below. *See Bonilla*, 463 F.3d at 1181; *Woodson*, 30 F.4th at 1307.

Nothing in § 3553(c) requires a district court to make two separate explanations—one for the term of imprisonment and one for the term of supervised release. Every one of our sister circuits that has considered the issue agrees on that point. *See United*

---

[9] Hamilton acknowledges this point. *See* Appellant Br. at 41 ("A sentence of supervised release is part of *the* sentence imposed by the district court.") (emphasis added). Instead, Hamilton cites *United States v. Veteto*, 920 F.3d 823 (11th Cir. 1991), for the proposition that a district court must "tailor its comments to show that the sentence [of supervised release] is appropriate, given the factors to be considered as set forth in § 3553(a)." Appellant Br. at 41–42 (quoting *Veteto*, 920 F.2d at 826) (alteration in brief). But *Veteto* did not address the issue of a district court failing to give separate reasons for imprisonment versus supervised release; in fact, it did not address supervised release at all. It dealt with a general challenge to the sufficiency of a district court's explanation for its sentence.

*States v. Domínguez-Figueroa*, 866 F.3d 481, 486 (1st Cir. 2017); *United States v. Clark*, 726 F.3d 496 502 (3d Cir. 2013); *United States v. Aplicano-Oyuela*, 792 F.3d 416, 425 (4th Cir. 2015); *United States v. Presto*, 498 F.3d 415, 419 (6th Cir. 2007); *United States v. Bloch,* 825 F.3d 862, 869 (7th Cir. 2016); *United States v. Daniels*, 541 F.3d 915, 922 (9th Cir. 2008); *United States v. Penn*, 601 F.3d 1007, 1011–12 (10th Cir. 2010).

The reason a separate explanation is not required under § 3553(c) is fairly obvious. With the exception of punishment (§ 3553(a)(2)(A)) and the kinds of sentences available (§ 3553(a)(3)), the factors to be considered in imposing a term of supervised release are the same as the factors to be considered in imposing a term of imprisonment. *Compare* § 3583(c) with § 3553(a).[10] In fashioning the sentence, then, the district court considered all the evidence relevant to those factors when it determined the term of imprisonment—it had no additional information to consider in imposing the term of supervised release. To require the court to mechanically repeat its § 3553(a) findings would be redundant and inefficient.

To be sure, under § 3553(c)(1), a district court must sufficiently explain its reasons for imposing the sentence—including both imprisonment and supervised release—at any particular point

---

[10] "The court . . . in determining the length of the term . . . of supervised release, shall consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." 18 U.S.C. § 3583(c).

within the guideline range. But a district court's reasoning inevitably supports both the imprisonment and supervised release portions of the district court's sentence. A district court need not address each component separately so long as it gives a sufficient explanation—that is, so long as the district court "set[s] forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita*, 551 U.S. at 356, 127 S. Ct. at 2468.

The District Court was required to sentence Hamilton to a supervised release term between five years and life.[11] As noted, in determining the term of supervised release the Court had to consider the nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553(a)(1)), general deterrence (§ 3553(a)(2)(B)), specific deterrence and protection of the public (§ 3553(a)(2)(C)), the defendant's need for educational or vocational training, medical care, or other correctional treatment (§ 3553(a)(2)(D)), pertinent policy statements (§ 3553(a)(5)), the need to avoid sentence disparities (§ 3553(a)(6)), and restitution to victims (§ 3553(a)(7)). § 3583(b).

Here, the District Court did just that. Hamilton argues that the District Court "stated no reason at all for imposing a supervised release term of 'life' on Mr. Hamilton," Appellant Br. at 42, and that the reasons given by the Court "did not address the supervised

---

[11] "[T]he authorized term of supervised release . . . under section . . . 2252 . . . is any term of years not less than 5, or life." 18 U.S.C. § 3583(k).

release portion of the sentence." *Id.* While the District Court did not *separately* address the § 3553(a) factors specifically with respect to the term of supervised release, it gave many reasons for imposing its overall sentence—reasons that applied as much to the term of imprisonment as to the term of supervised release. This was all the Court was required to do.

The Court had all the evidence available in considering the need for the sentence, and thus the term of supervised release, to provide general and specific deterrence. The Court's reasoning indicates that it gave thoughtful consideration to Hamilton's age, status as a first-time offender, and his prior sexual abuse, but was also concerned that he had abused more children than the government knew about and even more concerned for the safety of children should Hamilton not be supervised post-release. To accommodate these dueling concerns, the District Court imposed a much shorter term of imprisonment than the guidelines called for, but coupled it with a lifetime term of supervised release.

Hamilton is not without recourse, and is not necessarily locked into a lifetime term of supervised release. The Sentencing Reform Act of 1984, Pub. L. 98–473, 98 Stat. 1987, gives district courts flexibility to address post-release changes and issues with respect to supervised release. According to the Sentencing Reform Act, a district court may:

> modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration of the term of supervised release, pursuant to the provisions

of the Federal Rules of Criminal Procedure[12] relating
to the modification of probation and the provisions
available to the initial setting of the terms and condi-
tions of post-release supervision.

§ 3583(e)(2).

Before it may exercise this discretion, the district court must
consider "the factors set forth in section 3553(a)(1), (a)(2)(B),
(a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)"—the same fac-
tors that it must consider when imposing a term of supervised re-
lease in the first place. § 3583(e). The difference is that in consid-
ering whether to revise the term of supervised release at a later
time, a district court can take into account evidence not available
when it initially fashioned its sentence.[13] Hamilton may petition
the District Court to modify his term of supervised release in the
future.[14] *See United States v. Trailer*, 827 F.3d 933, 937 (11th Cir.

---

[12] Federal Rule of Criminal Procedure 32.1(c) provides procedural guidelines
for modification of supervised release.

[13] This flexibility to refashion the term of supervised release "at any time" is
unique and is not something a district court can do with respect to a term of
imprisonment. A district court has no inherent authority to modify a defend-
ant's sentence and may do so "only when authorized by a statute or rule."
*United States v. Puentes*, 803 F.3d 597, 605–06 (11th Cir. 2015). 18 U.S.C.
§ 3583(e)(2) provides this authority for supervised release. 18 U.S.C. § 3582(c)
outlines the very limited circumstances under which modification of a sen-
tence of imprisonment might be appropriate.

[14] After he serves at least one year of his supervised release, Hamilton may
also petition the District Court to terminate his term of supervised release,
"pursuant to the provisions of the Federal Rules of Criminal Procedure relat-
ing to the modification of probation, if [the District Court] is satisfied that such

21-14266               Opinion of the Court                    19

2016).  The District Court may also act to modify Hamilton's supervised release without a motion from Hamilton.[15]

In sum, the District Court's statement of reasons complied with § 3553(c)(1).  It explained which of the § 3553(a) factors it found most persuasive and stated that it had considered the parties' arguments and the PSR in sentencing Hamilton.  The Court also indicated that, in determining its sentence, it considered Hamilton's age, as well as Hamilton's claim that he had been a victim of sexual assault himself.  This explanation was sufficient as to Hamilton's overall sentence, which was comprised of a term of imprisonment of 40 years and a lifetime term of supervised release.

**AFFIRMED.**

---

action is warranted by the conduct of the defendant released and the interest of justice."  18 U.S.C. § 3583(e)(1).

[15] This would most likely occur upon recommendation of the probation office or United States Attorney's office.  In such a scenario, though, the District Court would be required to hold a hearing—at which Hamilton would have the right to counsel and an opportunity to speak and present evidence on his own behalf—prior to modifying the conditions of his supervised release.  *See* Fed. R. Crim. P. 32.1(c)(1).